Kristen Jill (Dalton) THOMPSON, Respondent,

v.

William Leon DALTON, Appellant.

No. WD 50709.

Missouri Court of Appeals, Western District.

Dec. 12, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1996.

David P. Chamberlain, Liberty, for appellant.

Joseph DeCuyper, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Judge.

Mr. William Leon Dalton appeals from an order of the trial court modifying his child support obligation. The marriage between Mr. Dalton and Respondent, Ms. Kristen Jill (Dalton) Thompson, was dissolved in April 1982. There were two children born of the marriage: Christopher, born September 12, 1973, and David, born September 25, 1976.

In the original decree of dissolution Mr. Dalton was ordered to pay $400 per month as child support for the two children. This amount was increased to $500 per month in a court order modifying the original decree in November 1990. Ms. Thompson filed a Motion to Modify on February 18, 1994, seeking an increase in this amount, due to increased expenses for the children, including educational expenses. Mr. Dalton filed a cross-motion, requesting a decrease in child support on the ground that David was emancipated.

Each party submitted a Form 14, but the court rejected both, admitting into evidence its own Form 14. The trial court found Ms. Thompson's monthly gross income to be $927, and Mr. Dalton's to be $2792. The court did not give Mr. Dalton credit for any other children in his primary physical custody in its Form 14 calculations. The court found the presumed child support amount to be $619 per month, which it ordered Mr. Dalton to pay. It further ordered him to pay 75 per cent of the costs of the childrens' college educations, deriving the percentage from the Form 14 calculation of proportionate shares of combined income. The court also ordered that Mr. Dalton continue to

maintain medical care coverage for both children under a health benefit plan. As to the non-covered medical expenses, the court ordered Mr. Dalton to pay 75 per cent.

■ In a court tried case, our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and we must uphold the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or the court has erroneously declared or applied the law. *Id.* at 32.

In his first point, Mr. Dalton contends that the trial court erred in ordering him to continue paying child support for David because he was emancipated by age. He argues that when David turned eighteen on September 25, 1994, he was not enrolled in high school, a GED program, or any secondary school on his eighteenth birthday, as required by § 452.340 RSMo 1994.

Section 452.340, RSMo 1994, states that generally "the obligation of a parent to make child support payments shall terminate when the child ... [r]eaches age eighteen, unless the provisions of subsection 4 or 5 of this section apply." Subsection 5 provides, in pertinent part:

If when a child reaches age eighteen, he is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue until the child completes such program or reaches age twenty-one, whichever first occurs.

Section 452.340(5), RSMo 1994.

This court has previously held that the legislature intended for courts to apply § 452.340.5 broadly. *See Braun v. Lied*, 851 S.W.2d 93, 95–96 (Mo.App.1993). In *Braun*, we concluded that it would be improper to terminate a parent's duty to pay child support because of a "child's temporary inability to attend classes due to illness or physical disability when substantial evidence supports the finding that the interruption is temporary and that the child intends to continue his education." *Id.* at 96. While *Braun* concerned the continuance of support for a

child who missed one semester of college due to a medical condition, the rationale is the same here.

Mr. Dalton relies on *Beeler v. Beeler*, 820 S.W.2d 657 (Mo.App.1991). In *Beeler*, we held that the trial court properly terminated child support, because the child had not completed high school and was not enrolled in any type of program to complete his education. *Id.* at 661. That is not the situation with which we are faced.

■ David dropped out of high school before his eighteenth birthday, because of his learning disability. However, dropping out of a formal school setting did not end David's educational endeavors. David enrolled in a GED program after he dropped out of high school, which consisted of home study followed by an examination. He purchased all of the books and materials necessary for him to prepare for the examination, and the record shows that he studied for the exam at home. He took the examination before his eighteenth birthday. Although he did not pass, he re-entered the GED program before his eighteenth birthday and signed up to take the examination in December 1994.[1] In addition to studying and preparing for the examination, David enrolled in a two-year aviation mechanics course at Maple Woods Junior College five days after his eighteenth birthday. The evidence here demonstrates that David both intends to complete his education and is taking the necessary steps to do so. The trial court correctly determined that David's home study course satisfied the requirements of § 452.340.5 in that he continued to be enrolled in programs to complete his education. There was substantial evidence from which the trial could find that David was not emancipated. The trial court's ruling gives § 452.340.5 the liberal application that the legislature intended. *Braun*, 851 S.W.2d at 95. Point denied.

In his second point, Mr. Dalton contends that the trial court erred in ordering him to pay a percentage of the college expenses incurred by David and Christopher. Specifi-

---

**1.** The record shows that David failed to pass the December examination by five points. He again re-entered the GED program and signed up to take the next scheduled examination in February 1995.

cally, he asserts that the court failed to examine his ability to pay these expenses and to make a finding that the presumed child support amount calculated pursuant to Form 14 was unjust and inappropriate.

In this case, the court rejected the Form 14's supplied by both parties, and instead completed its own Form 14. Doing its own calculations, the court found the presumed child support amount to be $619 per month. In addition to ordering Mr. Dalton to pay this presumed amount, it ordered him to pay 75 per cent of the college expenses incurred by the parties' children.

Post-secondary educational expenses are not included in the calculations for Form 14. Form 14, Comments for Use (E); *Umphenour v. Umphenour*, 831 S.W.2d 764, 768 (Mo. App.1992). In *Umphenour*, the noncustodial parent argued that it was improper for the court to order him to pay a specified sum per month for educational expenses in addition to the amount of presumed child support calculated in Form 14. We rejected that argument holding that "when supported by the evidence, it is appropriate for the court to make an additional allowance of child support, in addition to the presumed amount under Form 14, for the educational needs of a child." *Umphenour*, 831 S.W.2d at 768.

■■■ Mr. Dalton asserts that the trial court failed to examine his ability to pay, but we are unable to find any support for this contention. The trial court is in the best position to determine whether the noncustodial parent is financially capable of contributing to a child's college expenses. *Leahy v. Leahy*, 858 S.W.2d 221, 226 (Mo. banc 1993). Both parties admitted into evidence Statements of Marital and Non–Marital Property, Income, and Expenses. Additionally, a pay stub of Mr. Dalton's showing his gross monthly income to be $2792 was admitted into evidence. Based upon this evidence and its Form 14 calculations the court ordered Mr. Dalton to pay 75 per cent of the childrens' college costs, limiting such costs to tuition, fees, and books. This demonstrates that the court did consider Mr. Dalton's ability to pay and supports the additional allowance of child support for educational expenses. Point denied.

In his third point, Mr. Dalton contends that the trial court erred in its calculation of presumed child support by not extending credit to Mr. Dalton for his biological child from his second marriage, as well as his new wife's two children, which he is in the process of adopting.

■■ The trial court expressly stated in its order that Mr. Dalton was not entitled to credit for the children he plans to adopt, because they are not yet finally adopted. Line 2c of Form 14 permits a court to consider the financial support that a parent gives to his or her children, natural or adopted, who are in that parent's primary physical custody and who are not involved in the action. However, it is only after a court enters a decree of adoption that a person seeking to become adopted becomes, for all legal intents and purposes, the child of the petitioner. § 453.080.1, RSMo 1994. No such decree has been entered, so the trial court correctly concluded that these two children were not Mr. Dalton's children for purposes of a Form 14 credit.

■■ As to Mr. Dalton's natural born son from his second marriage, the trial court may consider the financial support that Mr. Dalton gives to him, but only if this support is reflected in the record. *Beal v. Outley*, 897 S.W.2d 638, 641 (Mo.App.1995). The court cannot speculate when considering the financial support Mr. Dalton gives to his natural born son from his second marriage when determining the amount he will pay as support for his two children in Ms. Thompson's primary custody. *See id.* Mr. Dalton testified that he has one natural child with his new wife, giving his name and birth date. While he estimated his total monthly expenses to be $2862, Mr. Dalton presented no evidence as to what portion of these expenses were attributable to his son of the second marriage. Therefore, his claim for credit fails because it lacks evidentiary support. Point denied.

In Mr. Dalton's final point, he claims that the trial court erred in ordering him to pay a portion of the children's non-covered medical expenses, because there was insufficient evidence for such an award and it was not

requested in Ms. Thompson's motion. Ms. Thompson concedes that she made no request for this award and did not present evidence concerning non-covered medical expenses.[2]

The trial court ordered that Mr. Dalton continue to provide medical care coverage for Christopher and David through his employer's (or union's) health benefit plan. Additionally, the court required Mr. Dalton to pay 75 per cent of all reasonable medical expenses of the children not covered by the plan.

Under § 454.603.5, RSMo 1994, the trial court must require that Mr. Dalton be responsible for all or a portion of the medical expenses not covered by the health benefit plan if it finds: (1) the requisite plan does not cover all of the children's reasonable and necessary medical expenses; (2) the obligor has the financial ability to help contribute to the uninsured expenses; and (3) the obligee has substantially complied with the terms of the health benefit coverage.

■ The issue of these uninsured medical expenses was not before the trial court. Ms. Thompson neither pleaded nor proved who, if anyone, should pay for non-covered medical expenses. The question was not tried by agreement of the parties. There was no evidence presented as to what the medical expenses of the children are, whether such expenses are reasonable and necessary, how much the expenses are, and whether Ms. Thompson has substantially complied with the terms of the health benefit coverage. Without such evidence, the trial court could not have made the findings necessary before requiring that Mr. Dalton be responsible for all or a portion of the uninsured medical expenses. *See Murphy*, 536 S.W.2d at 32. The trial court erred by ordering Mr. Dalton to pay 75 per cent of the uninsured medical expenses.

The judgment of the trial court is affirmed, except for the order requiring the appellant

to pay 75 per cent of the uninsured medical expenses, which is reversed.

All concur.

---

**2.** There was an entry regarding health insurance on the trial court's Form 14 showing a credit received by Mr. Dalton. This entry refers to health insurance which the court ordered him to continue for the benefit of the two sons.