57 A.3d 1028

**Donald L. RICHARDSON**

v.

**Jacquelyn L. BOOZER.**

No. 0774, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Dec. 20, 2012.

2

4

Ayo M. Stevens, Upper Marlboro, MD, for Appellant.

Jane Moretz Edmisten, Washington, D.C., for Appellee.

Panel: KEHOE, HOTTEN, RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

HOTTEN, J.

On August 16, 2010, appellant, Donald Richardson, filed a *pro se* motion to modify child support in the Circuit Court for Prince George's County, seeking to compel appellee, Jacquelyn Boozer, to pay child support commencing in December

2009 and to reimburse appellant for overpayment of child support. The court granted appellant's motion, but ordered that he pay appellee an outstanding child support balance of $7,101. Appellant filed for reconsideration of that order, alleging that (1) his child support obligation was legally terminated when the child failed to graduate from high school and that (2) the court erred in calculating his total child support obligations under the post-October 1, 2010 child support guidelines. The court denied appellant's motion, finding that appellant's obligation extended beyond the date of termination and that his contentions regarding the court's calculations, were unfounded. Appellant noted an appeal, and presents four questions for our consideration:

1. Did the trial court err in determining that appellant had an obligation to pay child support until the minor child of the parties reached the age of nineteen years old?

2. Did the trial court err in failing to properly assess the termination date of the parties' obligation to pay child support and thereby improperly calculate the number of months of support owed by the appellant?

3. Did the trial court err in not utilizing the pre-October 1, 2010 child support guidelines in calculating appellant's child support obligation?

4. Did the trial court abuse its discretion by refusing to address appellant's claim of overpayment of child support?

For the reasons that follow, we affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The procedural history of the parties' efforts to obtain a divorce is extensive, so we will present a brief overview for purposes of the instant appeal. The parties married on November 26, 1988, and are the parents of their then-minor child, Christian Taylor Richardson ("Christian"), whom they adopted as an infant shortly after his birth on February 7, 1992. The parties mutually and voluntarily separated on July

14, 2001, and the trial court granted a judgment of absolute divorce on May 9, 2005.

On December 20, 2007, appellant noted his first appeal, in which we affirmed the trial court's ruling.[1] Relevant to our review, however, is the court's judgment of absolute divorce. As part of the dissolution, the court awarded appellee sole legal and primary physical custody of Christian. Appellee was responsible for maintaining health insurance coverage for Christian, and appellant was ordered to pay appellee $1,456 per month for child support commencing from May 1, 2003.

On July 15, 2009, the parties reached an agreement regarding child support, and on August 15, 2009, the court ordered that appellant pay child support to appellee in the amount of $1,062 on the first day of each and every month until the later of (1) Christian attaining the age of eighteen years or (2) Christian's graduation from high school.

On November 24, 2009, appellee informed Christian that he could no longer reside with her, since he ignored her instructions. Christian began residing with appellant on November 29, 2009. Appellant ceased his child support payments, and filed a motion on December 9, 2009, requesting that the court (1) order appellee to pay child support in the amount of $895 per month until Christian attained the age of eighteen or graduated from high school; (2) order appellee to pay by check the amount of $3,369 for overpayment of child support; and (3) order appellee to file a statement of satisfaction of monetary judgment, reflecting appellant's payment of $43,975.75 with accrued interest.

On April 11, 2010, Christian returned to his mother's home. He was expected to graduate from Sidwell Friends School

---

1. We found that the trial court did not err (1) in admitting evidence of appellee's inconsistent statements regarding adultery; (2) in failing to consider the parties' agreement regarding joint legal custody for Christian; and (3) in finding that the Alabama and North Carolina rental properties were marital property, in applying the source of funds rule, and in dividing the equity in the marital home 50/50. *Richardson v. Boozer*, No. 2401 September Term 2007, Slip op. 1 (Ct. of Spec.App. August 7, 2008).

("Sidwell"), a private educational institution, on June 12, 2010. However, he failed to meet the graduation requirements and earn his high school diploma. As a result, on August 16, 2010, appellant renewed the abovementioned motion regarding child support. Appellee alleged that Sidwell's administration permitted Christian to register for substitute courses at Prince George's Community College to obtain his diploma from Sidwell. Christian enrolled for the summer and fall 2010 semesters, but failed the necessary courses.[2]

During the motion's hearing on January 31, 2011, the court stated, ". . . [U]nder Maryland law, child support extends to age 19 or high school graduation, whichever comes first. So as long as he is working towards his high school graduation, then child support continues to age 19." Because Christian would attain the age of nineteen on February 7, 2011, the court determined that appellant's support would be terminated seven days from the hearing. The court granted appellant's motion, finding that there was a material change in circumstances, but ordered that appellant pay appellee an outstanding child support balance of $7,101. The court used the post-October 1, 2010 child support guidelines, and computed appellant's obligation, less the five months that Christian resided with appellant and unreimbursed medical expenses of $419, resulting in a total of $7,101.

On February 10, 2011, appellant filed a motion for reconsideration, arguing that the court erred in (1) determining that his child support obligation was not legally terminated when Christian failed to graduate high school and (2) calculating his total child support obligations under the post-October 1, 2010 guidelines. The court denied appellant's motion, finding that

---

**2.** Other than appellee's assertion, which was not challenged by appellant on the record below, there was nothing else that attested to Sidwell accepting course completion from Prince George's Community College. Moreover, appellee insisted before the trial court, that Christian had completed the necessary college courses, and that Christian received his diploma from Sidwell in June 2011, but there was no documentation in the record to reflect this. However, we perceive that appellee's statement was sufficient to establish this fact.

appellant's obligation to pay the child support arrearages extended beyond the date of termination for ongoing child support. The court concluded that there was no merit to appellant's assertion that his child support obligation was calculated under the wrong criteria, since the court's calculations were effective until September 30, 2010. Thereafter, appellant filed a timely appeal.

## DISCUSSION

### I. Whether the Trial Court Erred in Determining That Appellant Had a Child Support Obligation Until Christian Reached Nineteen Years Old?

The circumstances under which child support may be terminated once a child attains the age of eighteen are governed by Md.Code (1957, 2011 Repl.Vol.), Article 1, § 24(a)(2) of the Rules of Interpretation, which provides in pertinent part:

A person who has attained the age of 18 years and who is enrolled in secondary school has the right to receive support and maintenance from both of the person's parents until the first to occur of the following events:

(i) The person dies;

(ii) The person marries;

(iii) The person is emancipated;

(iv) The person graduates from or is no longer enrolled in secondary school; or

(v) The person attains the age of 19 years.

The issue is whether Christian fell within the purview of Md.Code (1957, 2011 Repl.Vol.), Article 1, § 24(a)(2)(iv) of the Rules of Interpretation. It is undisputed that Christian did not graduate from Sidwell in June 2010, but was enrolled at Prince George's Community College in an effort to substitute the necessary courses required by his high school to secure his diploma. In appellant's motion for reconsideration, he acknowledged that " . . . [Christian] did enroll at the Prince George's Community College for [s]ummer and [f]all 2010 classes as a special student" and was enrolled in January 2011.

Furthermore, appellant did not object during the hearing when appellee asserted that Christian was registered at the community college for the purpose of attaining his high school diploma.

Appellant asserts that his obligation to pay child support ended in June 2010 because Christian failed to attain his high school's graduation requirements, and was not enrolled at the high school or other secondary school. Appellee avows that Christian's pursuit of his high school diploma at Prince George's Community College was the legal equivalent of enrollment in a secondary school. She also avers that Md.Code (1957, 2011 Repl.Vol., 2012 Cum.Supp.), Article 1, § 24(a)(2) of the Rules of Interpretation would not suggest a narrow reading of the statutorily undefined phrase "enrolled in a secondary school." We agree and explain.

A question regarding statutory interpretation is a legal question, which we review *de novo. Harvey v. Marshall,* 389 Md. 243, 257, 884 A.2d 1171 (2005) (citing *Mohan v. Norris,* 386 Md. 63, 66–67, 871 A.2d 575 (2005)); *see also Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78 (2004) (Maryland appellate courts review issues *de novo* to decide if the trial court was legally correct in its interpretations of the Maryland Code.).

The statute provides that a child, who has reached age eighteen, and is enrolled in secondary school, has the right to receive support and maintenance until the child (1) graduates from or is no longer enrolled in secondary school, (2) reaches the age of 19, (3) is emancipated, or (4) marries. Md.Code (1957, 2011 Repl.Vol., 2012 Cum.Supp.), Article 1, § 24(a)(2) of the Rules of Interpretation. The term "secondary school" is not defined in the statute. However, the lack of an expressed definition does not prevent us from analyzing the legislative intent. *Schreyer v. Chaplain,* 416 Md. 94, 101, 5 A.3d 1054 (2010). To construe the intent, we start by observing the plain meaning of the statutory terminology. *Bornemann v. Bornemann,* 175 Md.App. 716, 724, 931 A.2d 1154 (2007) (citing *Reier v. State Dept. of Assessments and Taxation,* 397

Md. 2, 26, 915 A.2d 970 (2007)). "The fundamental goal of statutory construction is to ascertain and effectuate the intention of the [l]egislature." *Witt v. Ristaino,* 118 Md.App. 155, 162, 701 A.2d 1227 (1997) (citing *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995)). If the language is apparent and explicit, we end our search. *Bornemann,* 175 Md.App. at 724, 931 A.2d 1154 (citing *Evans v. State,* 396 Md. 256, 341, 914 A.2d 25 (2006)). However, if the language is not clearly reflective of the legislature's intent, we examine "intent from the legislative history or other sources." *Id.* (citing *Allstate Ins. Co. v. Kim,* 376 Md. 276, 290, 829 A.2d 611 (2003)). "We may thus consider the consequences resulting from one meaning, rather than another, and adopt the construction which promotes the most reasonable result in light of" the General Assembly's purpose. *Witt,* 118 Md.App. at 163, 701 A.2d 1227 (internal quotation omitted) (citing *Rucker v. Comptroller of the Treasury,* 315 Md. 559, 565, 555 A.2d 1060 (1989)).

▮ The genesis of the amendment to Md.Code (1957, 2011 Repl.Vol., 2012 Cum.Supp.), Article 1, § 24(a)(2) of the Rules of Interpretation is found in the Age of Majority Bill,[3] which was passed and enacted in the 2002 session of the General Assembly. *Bornemann,* 175 Md.App. at 724, 931 A.2d 1154. The amendment is silent concerning the meaning of secondary school; however, the Revised Fiscal Note of the Department of Legislative Services is not. Our appellate courts have generally considered fiscal notes in determining legislative intent. *See generally Gomez v. Jackson Hewitt, Inc.,* 427 Md. 128, 177–78, 46 A.3d 443 (2012); *Anderson v. United States,* 427 Md. 99, 111, 46 A.3d 426 (2012); *Cosby v. Dep't of Human Res.,* 425 Md. 629, 648–49, 42 A.3d 596 (2012).

The Revised Fiscal Note to the Age of Majority Bill reads: According to the Office of Child Support Enforcement of the U.S. Department of Health and Human Services, 44 states require[d] child support until the child reache[d] the age of

---

**3.** The Age of Majority Bill was composed of Senate Bill ("SB") 657 and House Bill ("HB") 993 of the 2002 General Assembly. SB 657 was signed, and HB 993 was vetoed.

18. Thirty-three of those states allow[ed] continuation of child support past the age of 18, if the child [was] a high school student. States var[ied] the termination date of child support for high school students and . . . establish[ed] it at 19, 20, or 21. [In some states], enrollment in a high school equivalency, vocational, or technical course of education [met] the educational requirement. . . .

Dep't of Legis. Servs., Revised Fiscal Note, S.B. 657 (2002).

■ Since the term "secondary school" was undefined in the statute, we consult those editions of the dictionary that were in close proximity to the statute's enactment. *See Harvey v. Marshall*, 389 Md. 243, 261, n. 11, 884 A.2d 1171 (2005) (citing *Rossville Vending Mach. Corp. v. Comptroller of Treasury*, 97 Md.App. 305, 316–18, 629 A.2d 1283 (1993)) (stating "it seems logical, at least in a linear way, that a popular dictionary [around the time in which a statute was enacted] would be an informative resource in attempting to arrive at a determination of what the 1936 [l]egislature intended by the usage of 'gross receipts'"). In 2002, Article 1, § 24(a)(2) of the Rules of Interpretation was introduced for the first time. S.B. 657, 416th Gen. Assem., Reg. Sess. (Md.2002). Therefore, we consult WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2051 (2002), defining secondary school as "a school more advanced in grade than an elementary school [4] and offering general, technical, vocational, or college-preparatory courses."

■ Post-secondary education is defined as "a school or other institution that offers an educational program within the State for persons 16 years of age or older who have graduated from or left elementary or secondary school." *McCarthy v. Bd. of Educ. of Anne Arundel County*, 280 Md. 634, 644, 374 A.2d 1135 (1977). However, post-secondary education ex-

---

4. Elementary school is "a school in which elementary subjects (as reading, writing, spelling, and arithmetic) are taught to children from about six to about twelve years of age which in the U.S. covers the first six or eight grades." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 735 (2002).

cludes "an adult education, evening high school, or high school equivalency program . . . ." *Id.*

The Maryland Dream Act, Senate Bill 167 of the 2011 General Assembly, established requirements for individuals who desired in-state tuition. *See generally Doe et al. v. Md. State Bd. of Elections,* 428 Md. 596, 602, 53 A.3d 1111 (2012). In *Doe et al. v. Md. State Bd. of Elections,* 428 Md. at 602, n. 3, 53 A.3d 1111, the Court of Appeals alluded to Md.Code (1978, Supp.2011), § 15–106.4(b) of the Education Article, which read:

> . . . The individual must prove that he or she attended a Maryland secondary school for at least three years, and that he or she graduated from a Maryland secondary school or received a high school equivalency diploma.

Accordingly, we deduce that a secondary school education includes a high school equivalency program.

While this issue is one of first impression in Maryland, other jurisdictions have considered what constitutes enrollment in a secondary school, including Missouri, which we surmise is one of the leading jurisdictions in analyzing the issue at hand. In *In re Marriage of Copeland,* 850 S.W.2d 422, 423 (Mo.Ct.App. 1993) [hereinafter *"Copeland"*], the Missouri Court of Appeals determined whether a child's enrollment in an adult basic education program at a vocational-technical school was enrollment in a secondary school program of instruction. Upon divorce, the trial court awarded the mother primary custody of the child, and ordered the father to pay child support. *Id.* at 424. The child discontinued his high school attendance at the age of seventeen. *Id.* His principal recommended that he transfer to a General Educational Development (GED) program to prepare for the high school equivalency exam, which the child, did. *Id.* The father argued that the child's GED program was not enrollment in a secondary school under the state's statute, which terminated his child support obligation. *Id.*

The Missouri statute read:

. . . [W]hen a child reaches age eighteen, he is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue until the child completes such program or reaches age twenty-one, whichever first occurs. . . .

*Id.* at 425. The court concluded that "secondary school program of instruction" was a broad concept and could not be narrowly confined to a traditional high school. *Id.*

In the Missouri court's analysis, it noted that the child tested in reading, mathematics, language, social studies, and natural sciences to determine his areas of weakness. *Copeland,* 850 S.W.2d at 425. He was given assignments to improve his skills in those areas, he used computer disks and workbooks, and instructors were available to answer questions and give direction. *Id.* The program continued until the student was able to take and pass the GED exam. *Id.* The court held that there was sufficient evidence to support a finding that the child was enrolled in and attending a secondary school program of instruction. *Id.* at 426.

In *Thompson v. Dalton,* 914 S.W.2d 811, 813 (Mo.Ct.App. 1995), the father averred that the trial court erred in continuing his child support obligation because his child was not enrolled in high school, a GED program, or a secondary school by his eighteen birthday. The child discontinued high school, enrolled in a GED program, but did not pass the examination. *Id.* He re-registered for the program before his eighteenth birthday, as well as enrolled in a two-year aviation mechanical course of study at a community college. *Id.* The Missouri Court of Appeals concluded that the evidence displayed the child's intention to complete his secondary education, so the trial court did not err, as the child was not emancipated. *Id.*

In *Beeler v. Beeler,* 820 S.W.2d 657, 661 (Mo.Ct.App.1991), the wife argued that the trial court erred in terminating the father's child support obligation. The child had not graduated from high school, and during the time he reached the age of eighteen, he was not enrolled in any secondary school pro-

gram. *Id.* Thus, the trial court was correct in terminating the father's child support obligation. *Id.*

Louisiana's termination of child support statute operates in a similar fashion as our Maryland statute. *See Park v. Park*, 634 So.2d 83, 85 (La.App. 1 Cir.1994). In *Park*, 634 So.2d at 86, the Louisiana Court of Appeals, First Circuit decided if a child's enrollment in a vocational-technical school was sufficient to satisfy the statute's secondary school requirement. The mother requested temporary and permanent child support, but the father argued that the mother was not entitled to child support because the parties' child was no longer enrolled in a secondary school. *Id.* at 84. The trial court agreed with the father, and denied the mother's request. *Id.*

Louisiana's statute provided:

An order or judgment of child support shall continue with respect to any unmarried child who attains the age of majority as long as the child is a full-time student in good standing in a secondary school, has not attained the age of nineteen, and is dependent upon either parent. . . .

*Park*, 634 So.2d at 85. During a hearing, the child testified that he was enrolled in a vocational-technical school and that he was pursuing a GED or high school equivalency education, as well as learning automotive technology. *Id.* The Louisiana court found that the child satisfied the statute's requirement, holding that it gave due consideration not only to the type of educational facility in which the education was pursued, but also to the curriculum which was taught at the facility. *Id.* at 86.

In *In re Frost*, 815 S.W.2d 890, 891 (Tex.App.1991), the father avowed that because his child was beyond eighteen years of age and was not enrolled in an accredited secondary school, his child support obligation should have been terminated. The Texas statute provided, in pertinent part:

[T]he court . . . may render an original support order . . . past the 18th birthday of the child, whether the request for such an order is filed before or after the child's 18th birthday, *if the child is fully enrolled in an accredited*

*secondary school in a program leading toward a high school diploma.*

*Id.* at 892 (quotations omitted) (emphasis in original).

The child had a learning disability and enrolled in an alternative and equivalent special needs program at a community college. *In re Frost,* 815 S.W.2d at 891. The program was approved by the Texas Education Agency and the child's high school principal, and upon completion of the program, the school would confer a diploma upon him. *Id.* at 893. The Texas Court of Appeals concluded that "the obvious intent of the legislature was to require a father to aid in the support of his child, even if that child [was] over eighteen years of age, so long as that child was actively participating in studies which would lead to a high school diploma." *Id.* at 892.

In *Howell v. Goode,* 223 W.Va. 387, 674 S.E.2d 248, 249 (2009), the mother appealed the trial court's order, which terminated the father's child support obligation when the child was enrolled in high school until the age of twenty. Although the parties' child had completed the minimum requirements for his high school graduation, the administration recommended an additional year of schooling because of the child's special education needs. *Id.* at 250. The West Virginia statute read in relevant part, as follows:

> Upon a specific finding of good cause shown . . . , an order for child support may . . . continue beyond the date when the child reaches the age of eighteen, so long as the child is unmarried and residing with a parent, guardian or custodian and is enrolled as a full-time student in a secondary educational or vocational program *and making substantial progress towards a diploma:* Provided, That such payments may not extend past the date that the child reaches the age of twenty.

*Id.* at 251.

The West Virginia Supreme Court of Appeals concluded that "[t]he [l]egislature did not specify that child support would cease when the child became *eligible* to receive a diploma based upon satisfactory completion of minimum edu-

cational requirements." *Id.* at 252. There was good cause to continue child support since the child had a learning disability and he was "making substantial progress towards a diploma." *See id.* at 254.

Our consideration of the language of the Age of Majority Bill, including the Revised Fiscal Note, and Webster's Dictionary, leads us to reasonably conclude that the General Assembly intended that "enrolled in secondary school" encompassed a broader view of obtaining a high school diploma by the means of alternative, equivalency educational programs. Furthermore, other jurisdictions have accepted vocational-technical, GED programs, and equivalency courses as sufficient schooling to satisfy their statutes' secondary school requirements. We are not concerned with the structural facility, but rather, concerned with the course of education being taught. We do not deduce that the General Assembly intended to have child support automatically terminated because a child did not graduate from high school in a timely manner, or because the child obtained his or her high school diploma via an alternative, non-traditional course of study. "A high school equivalency diploma is no less a secondary school education because it [was] pursued in a [community college setting] instead of a high school." *Park,* 634 So.2d at 86.

Our research has revealed a Missouri case to which the court surmised that termination of the parent's child support obligation was proper. In *Jones v. Jones,* 924 S.W.2d 51, 52 (Mo.Ct.App.1996), the father ceased his child support payments because his son, who reached the age of eighteen in May 1994, discontinued his high school attendance in April 1994, and was not enrolled in any secondary school program. The child reregistered for high school in September 1994, but again discontinued attendance. In March 2005, the child enrolled in a diploma equivalent program. *Id.* The Missouri Court of Appeals found that:

> [The child] . . . had clearly quit all study before graduation and before his 18th birthday. His studies were not ongoing and in a natural period of recess such as summer vacation.

He did re-enroll in high school the next fall, but only to quit again after only a month of missing more classes than he attended. He did not undertake any vocational training. He waited until March 1995 to undertake GED studies—nearly a year after his 18th birthday.

*Jones*, 924 S.W.2d at 53. Thus, the father's child support obligation ended when the child reached age eighteen. *Id.*

Our case differs from *Jones* because Christian did not discontinue his attendance at Sidwell, and his studies were continuous. Christian was expected to graduate from Sidwell in June 2010. As indicated in the record, Sidwell's administration permitted him to enroll in Prince George's Community College's summer and fall 2010 semester to obtain his high school diploma. Although he failed the necessary equivalency courses during those periods, he re-registered for the spring 2011 semester, completed the necessary courses, and received his diploma from Sidwell in June 2011.

Although Christian was enrolled in Prince George's Community College, it was a limited, specific type of curriculum for the purposes of obtaining his Sidwell diploma. Thus, the trial court was legally correct when it found that, "... child support extend[ed] to age 19 or high school graduation, whichever [came] first. So long as Christian [was] working towards his high school graduation, then child support continue[d] to age 19." We agree that appellant had an obligation to pay child support from April 2010, the time when Christian returned to his mother's home, until February 2011, when Christian reached the age of nineteen.

## II. Whether the Trial Court Erred in Utilizing the Post–October 1, 2010 Child Support Guidelines in Calculating Appellant's Obligation?

"Child support orders are generally within the sound discretion of the trial court." *Knott v. Knott*, 146 Md.App. 232, 246, 806 A.2d 768 (2002). Although the child support guidelines apply in most cases, in situations where the combined adjusted monthly income exceeds the statutory lim-

it, the court may exercise discretion in setting the amount of child support. Md.Code (1984, 2006 Repl.Vol., 2012 Cum. Supp.), § 12–204(d) of the Family Law Article. Permitting judicial discretion promotes the public policy of the guidelines, that even at very high income levels, "a child's standard of living should be altered as little as possible by the dissolution of the family." *Chimes v. Michael,* 131 Md.App. 271, 289, 748 A.2d 1065 (2000) (quoting *Voishan v. Palma,* 327 Md. 318, 328, 609 A.2d 319 (1992)).

Maryland's child support guidelines first require that the trial court determine each parent's monthly adjusted actual income. *Voishan,* 327 Md. at 323, 609 A.2d 319. Following this determination, the court then adds the two amounts to arrive at the parents' monthly combined adjusted actual income. *Id.* After calculating the combined adjusted actual income, the court then determines whether the figure falls within the range of incomes found in the schedule of § 12–204(e). *Id.*

Pursuant to Md.Code (1984, 2006 Repl.Vol., 2012 Cum. Supp.), § 12–204(d) of the Family Law Article, under the pre- and post-October 1, 2010 guidelines, it reads:

Income above scheduled levels.—If the combined adjusted actual income exceeds the highest level specified in the schedule in subsection (e) of this section, the court may use its discretion in setting the amount of child support.

Before October 1, 2010, if the parents' monthly income did not reach $10,000, the child support obligation was calculated using the guidelines. *Gladis v. Gladisova,* 382 Md. 654, 663, 856 A.2d 703 (2004). However, if the parents' monthly income exceeded $10,000, the court could exercise its discretion in setting the amount of child support. *Id.* After October 1, 2010, the General Assembly changed the highest level specified in the schedule from $10,000 to a $15,000 monthly income. *See* Md.Code (1984, 2006 Repl.Vol., 2012 Cum.Supp.), § 12–204(e) of the Family Law Article.

In *Voishan,* 327 Md. at 321, 609 A.2d 319, the Court of Appeals granted certiorari to determine whether the trial

court erred in determining a child support award. After the parties' divorce, the mother was awarded custody of the parties' two daughters, and the father was ordered to pay $1,550 per month for the minor daughter. *Id.* The father's annual income was $145,000, while the mother earned $30,000 annually. *Id.* at 324, 609 A.2d 319. The court found the parent's combined adjusted actual income totaled $175,000 annually or $14,583 per month, exceeding the $10,000 statutory amount. *Id.* The court examined expense sheets for each of the parties and concluded that the reasonable expenses of the child were $1,873 per month. *Id.* at 325, 609 A.2d 319. The court then calculated eight-three percent of that figure and rounded the father's share of the obligation down to $1,550 each month. *Id.* The father argued that the court should have used the maximum basic child support obligation listed in the schedule. *Id.* The Court held that it was not the intent of the General Assembly to cap the child support obligation, and ruled that the court did not abuse its discretion in determining the amount. *Id.* at 325–27, 609 A.2d 319.

In *Chimes,* 131 Md.App. at 275, 748 A.2d 1065, the trial court disregarded the guidelines, and set child support by allocating the child's needs equally between the divorced parties. We agreed, as the trial court had broad discretion since the guidelines did not apply. *Id.* at 290, 748 A.2d 1065. The trial court was aware of the income and resources available to each of the parties, including the father's nearly $1.5 million monetary award. *Id.* The court acknowledged that the mother earned $65,000 per year, and that the father had the proven ability to earn more than $120,000 per year. *Id.* After it determined that the parties' income exceeded the maximum amount under the guidelines, the trial court determined the child's reasonable needs using the plaintiff's financial statement. *Id.* We concluded that from the record, it was clear that the court made the decision based on sufficient evidence, and that the court did not abuse its discretion. *Id.* at 291, 748 A.2d 1065.

In the case *sub judice,* during the January 31, 2011 hearing, the trial court gave appellant and appellee the opportunity to

"go downstairs to the ground floor" to the Prince George's County Circuit Court Family Division, so the personnel could give them a child support guidelines sheet and "help [them] calculate the child support as to what [appellee] would've owed [appellant] during the five months that [the] son was with his dad, and then [appellant could] recalculate the amount of child support that [he] would've owed from the time Christian went back to his mom. . . ." After a recess, the court asked the parties, "[d]id you go downstairs and run the guidelines?" to which appellant replied, "no." Eventually, the court phoned the division because it did not have a blank guidelines worksheet to calculate appellant's child support obligation.

(On the phone)

THE COURT: (Indiscernible) under CAD02–06438, okay, Richardson versus Boozer. Okay, the child's name is Christian, date of birth is 02/07/1992. Okay (indiscernible) be [sic] trying to run the calculation (indiscernible).

Okay, well, just do me a favor. No, because I need you to do this twice. I need you to (indiscernible) father's income, [$]108,400 annually (indiscernible) health insurance cost is 130 a month. And the mother's income is [$]92,000 (indiscernible).

Then I need you to do it over again with mother as primary sole custody, and her health insurance is [$]410 a month. So we can drop dad's health insurance for those months. Follow me? I need you to calculate it in both directions, okay?

And then send it down with the adjusted amount, with three copies, okay? All right, thanks, bye.

(End of phone call).

After a brief recess, the court gave each party a set of the worksheets, and predicated its findings on them. The court concluded that if appellee was the primary custodian, appellant's obligation was $1,391, and if appellant was the primary custodian, then appellee's obligation was $1,052.

[THE COURT]: All right, so what I've got is $12,780 is dad's child support obligation for 10 months at the recalcu-

lated income. Mom's for 5 months at [$]1,052 is [$]5260. Adding the $419 of unreimbursed medical expenses makes that total $5,679. So dad's obligation is $7,101.

After adding appellant's income of $108,410 with appellee's income of $92,000, the parties' adjusted actual income totaled $200,410 annually, or approximately $16,700 monthly. This amount exceeds the highest levels specified in the pre- and post-October 1, 2010 schedules. As a result, we do not find that the court abused its discretion in calculating appellant's obligation, nor in utilizing the post-October 1, 2010 guidelines.

### III. Whether the Trial Court Abused Its Discretion By Refusing to Address Appellant's Tuition Claims?

Regarding appellant's overpaid tuition claims, the following colloquy ensued at the motions hearing:

[APPELLANT]: ... The final total I believe, if I can get it from Mrs. Boozer, that needs to be adjusted because I have (indiscernible) additional tuition payments which are not reflected in those numbers.

THE COURT: You didn't tell me anything about those.

\*　　　\*　　　\*

[APPELLANT]: Well, Your Honor, my motion did include that.

\*　　　\*　　　\*

THE COURT: No, actually, in your Motion to Modify Child Support, you wanted child support cut off on your son's 18th birthday, which wasn't correct. You wanted credit for an alleged overpayment of child support and you wanted the Statement of Satisfaction and Monetary Judgment about attorneys' fees which was in fact filed right after your motion was filed. There is nothing in here about tuition....

[APPELLANT]: Your Honor, it's my understanding that—

**22**

THE COURT: But the tuition is clearly not in there. I'm sorry, it's not. I can't consider that. It's not something that was in the motion.

Appellate review of issues not previously raised is discretionary. *Elliott v. State*, 417 Md. 413, 435, 10 A.3d 761 (2010). The trial court abuses its discretion " 'where no reasonable person would take the view adopted by the [trial] court,' " or when the court does not refer to any guiding principles or rules. *In re Yve S.*, 373 Md. 551, 583, 819 A.2d 1030 (2003) (quoting *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312–13, 701 A.2d 110 (1997)). "Questions within the discretion of the trial court are 'much better decided by the trial judges than by appellate courts, and the decisions of such judges should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred.' " *In re Caya B.*, 153 Md.App. 63, 74, 834 A.2d 997 (2003) (quoting *In re Adoption/Guardianship No. 3598*, 347 Md. at 312, 701 A.2d 110). Accordingly, we conclude that the trial court did not abuse its discretion by refusing to address appellant's claim.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**