*Brandon Mohan v. State of Maryland*, No. 1853, Sept. Term 2021. Opinion filed on November 30, 2022, by Berger, J.

STATUTORY INTERPRETATION - STATUTORY DEFINITION OF "PARENT" UNDER CRIMINAL LAW SECTION 3-602(B)(1) - "DE FACTO" PARENT - IN LOCO PARENTIS - STEPPARENT

The term "parent" under Md. Code (2002, 2021 Repl. Vol.), § 3-602(b)(1) of the Criminal Law Article does not include individuals who are stepparents, "*de facto*" parents, or individuals standing *in loco parentis*. The meaning of the term "parent" under Criminal Law Section 3-602(b)(1) is limited to individuals who are either the biological or adoptive parent of the child victim. A conviction for child sexual abuse cannot stand for an individual who is charged as a "parent" pursuant to Criminal Law § 3-602(b)(1) but who does not satisfy the statutory definition of "parent," even if the individual could have been convicted if charged as a "household member" or "family member" pursuant to Criminal Law § 3-602(b)(2).

SENTENCING - REMAND FOR RESENTENCING AFTER VACATED SENTENCE

An appellate court has discretion to vacate and remand sentences where the sentencing package has been disturbed by a decision to reverse a conviction. On remand, the trial court may impose a sentence on any remaining counts up to the maximum incarceration available at the time of the defendant's crime. The trial court may not impose a sentence that is more severe than the original aggregate sentence.

HEARSAY - PRIOR CONSISTENT STATEMENTS - MD. RULE 5-616(C)(2) - MD. RULE 5-802.1(B)

A prior consistent statement that is inadmissible under Md. Rule 5-802.1(b) as an exception to hearsay may be admissible as nonhearsay to bolster a witness's credibility under Md. Rule 5-616(c)(2). A party opens the door to admission of prior consistent statements under Md. Rule 5-616(c)(2) when impeaching a witness's credibility in either an opening statement or on cross examination. A prior consistent statement under Md. Rule 5-616(c)(2) must be consistent with the witness's present testimony and detract from or logically rebut the impeachment.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1853

September Term, 2021
_____

BRANDON MOHAN

v.

STATE OF MARYLAND
_____

Berger,
Friedman,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____

Majority Opinion by Berger, J.
Concurrence by Friedman, J.
_____

Filed: November 30, 2022

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Appellant, Brandon Mohan, was charged in the Circuit Court for Wicomico County with child sexual abuse, two counts of third-degree sex offense, two counts of fourth-degree sex offense, and two counts of second-degree assault. The State charged Mohan with committing sexual abuse of a minor, specifically as a "parent." The jury convicted Mohan of child sexual abuse, one count of third-degree sex offense, one count of fourth-degree sex offense, and one count of second-degree assault. The circuit court sentenced Mohan to twenty-five years' incarceration for the child sexual abuse offense, and ten years consecutive for the third-degree sex offense, but the court suspended the sentence for third-degree sex offense in favor of a five-year period of probation and lifetime registration as a sex offender.

Mohan presents two questions for our review,[1] which we have rephrased, for clarity, as follows:

I. Whether the circuit court erred in concluding Mohan was a "parent" under CR § 3-602(b)(1).

II. Whether the circuit court erred in admitting certain witness testimony as prior consistent statements.

For the reasons explained herein, we shall hold the circuit court erred in concluding Mohan was a "parent" as contemplated by Md. Code (2002, 2021 Repl. Vol.), § 3-602(b)(1) of the Criminal Law Article ("CR") (hereinafter also referred to as "the criminal

---

[1] Mohan's original questions presented are as follows:

1. Was the evidence insufficient to sustain Appellant's conviction for child sexual abuse?

2. Did the court err in admitting hearsay evidence?

statute"). We shall further hold the circuit court did not err in admitting certain witness testimony.

## FACTUAL AND PROCEDURAL HISTORY

The underlying facts of Mohan's convictions are not in dispute. Accordingly, we address only those facts essential to our review. Furthermore, to protect the privacy of the witnesses and the victim, certain individuals will only be identified by first name or initial.

In 2016, Mohan began a relationship with Haley. At the onset of their relationship, Haley was -- and still is -- the mother to a one-and-a-half-year-old girl, hereinafter referred to as "C." Mohan and Haley were later married in 2017, and then proceeded to live together -- along with C -- in a mobile home in Salisbury, Maryland from 2018 to 2020.

In August 2020, C disclosed to Haley that, on two separate occasions, Mohan put his penis on her vagina and/or told her to touch his penis. According to Haley's testimony at trial, Mohan denied these incidents occurred when she confronted him. Haley further testified that C refuted Mohan's denial. Haley further testified that Mohan ultimately admitted to touching C with his penis and/or having C touch his penis.

The State charged Mohan with various sex abuse offenses including a charge for the sexual abuse of a minor under CR § 3-602(b)(1). The Statement of Charges filed on August 30, 2020, and the Criminal Information filed on October 21, 2020, provided in relevant part:

### STATEMENT OF CHARGES

UPON THE FACTS CONTAINED IN APPLICATION OF
Officer: SCHULTZ, DET IT IS FORMALLY CHARGED

2

THAT MOHAN, BRANDON LEE at the dates, times and locations specified below:

006    10322        CR 3 602 ((b)(1))    25Y

. . . **did cause sexual abuse to JUVENILE FEMALE, a minor, the defendant being said child's parent**.

\*\*\*

## Count 1

THAT BRANDON LEE MOHAN, between the lst day of June, 2020 and the 30th day of August, 2020, in Wicomico County, State of Maryland, **did cause sexual abuse to [C], [a] minor, the defendant being said child's parent** . . . CR:3:602 (b)(1).

In both the Statement of Charges and the Criminal Information, the State specified that Mohan committed the alleged child sexual abuse as a "parent" of C.[2] At the close of the State's case -- with respect to Count 1 for child sexual abuse -- Mohan moved for judgment of acquittal. Mohan argued there was insufficient evidence to convict him as a "parent" of C, and further, he was not a "parent" under the criminal statute because he was neither C's biological nor adoptive parent.

The trial judge denied Mohan's motion and held he was a "parent" under the criminal statute. Specifically, the circuit court judge found Mohan was a "parent" under CR § 3-602(b)(1) because: (1) he was married to C's mother at the time of the alleged abuse and acted as a "live-in" step-parent; (2) he was a *de facto* parent; and (3) he stood *in loco parentis* to C. After Mohan testified and the State presented its rebuttal, Mohan

---

[2] As discussed in more detail below, the State charged, tried, and convicted Mohan under CR § 3-602(b)(1), specifically and only as a "parent."

3

renewed his motion for acquittal. The circuit court denied Mohan's motion, finding there was sufficient evidence to convict him as a "parent" under CR § 3-602(b)(1).

Before submitting the case to the jury, the circuit court judge instructed that to find Mohan guilty of child sexual abuse, the State must prove: (1) that Mohan sexually abused C by sexual offense or sexual exploitation; (2) at the time of the abuse C was under 18 years of age; and (3) at the time of the abuse Mohan was a parent of C. The jury convicted Mohan of child sexual abuse, one count of third-degree sex offense, one count of fourth-degree sex offense, and one count of second-degree assault. The trial judge sentenced Mohan to twenty-five years' incarceration for the child sexual abuse offense, and ten years consecutive for the third-degree sex offense. The trial court fully suspended the sentence for the third-degree sex offense in favor of a five-year period of probation and lifetime registration as a sex offender. Mohan's convictions for fourth-degree sexual offense and second-degree assault merged for sentencing with his conviction for third-degree sexual offense. This timely appeal followed.

## DISCUSSION

### Standard of Review

When reviewing the sufficiency of the evidence to sustain a criminal conviction we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Our review is made without deference to the legal reasoning of the trial judge, and instead, we will defer to the finder of fact and to "any reasonable inferences a jury could have drawn in

4

reaching its verdict." *Purnell v. State*, 250 Md. App. 703, 711 (2021); *Lindsey v. State*, 235 Md. App. 299, 311 (2018).

Mohan argues there was insufficient evidence to sustain his conviction for child sexual abuse. Mohan further maintains that the circuit court erred in its interpretation of the term "parent" under CR § 3-602(b)(1). The critical question before us is whether the circuit court erred in concluding that Mohan was a "parent" under the criminal statute. Indeed, whether there was sufficient evidence to sustain Mohan's conviction is secondary to the initial question of whether the circuit court properly concluded that the General Assembly intended the term "parent" to apply to an individual such as Mohan, who is a step-parent with parental responsibilities. Because we must first determine whether the circuit court correctly interpreted CR § 3-602(b)(1), our review is *de novo*. *Richardson v. Boozer*, 209 Md. App. 1, 9 (2012) ("A question regarding statutory interpretation is a legal question, which we review *de novo*.").

## I. The circuit court erred in concluding Mohan was a "parent" under CR § 3-602(b)(1).

The goal of statutory interpretation "is to ascertain and effectuate the real and actual intent of the Legislature." *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). Statutory interpretation begins with the plain language. *Price v. State*, 378 Md. 378, 387 (2003). If the plain language of the statute is unambiguous, our inquiry ends, and the statute is applied as written. *Lockshin*, *supra*, 412 Md. at 275. When the language is ambiguous, however, we must look further to grasp the legislative intent, and will turn to other indicia "including the relevant statute's legislative history, the context of the statute within the broader

5

legislative scheme, and the relative rationality of competing constructions." *Harrison-Solomon v. State*, 442 Md. 254, 265–66 (2015).  We do not read the statutory provision in isolation, but rather, the statute "must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Lockshin*, *supra*, 412 Md. at 276.  Furthermore, we will not attempt to clarify a statute with "forced or subtle interpretations" that would either limit or extend the statute's application.  *Id.* at 275.

We presume the General Assembly "intend[ed] its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Id.* at 276.  Further, "[w]e interpret statutes to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant." *Blondell v. Balt. City Police Dep't*, 341 Md. 680, 691 (1996).  Indeed, in all cases concerning statutory interpretation, we seek "a reasonable interpretation -- one that is consonant with logic and common sense." *Twigg v. State*, 447 Md. 1, 24 (2016).

Our interpretation of the criminal statute is focused on the meaning of the word "parent" as used in CR § 3-602(b)(1).  This is because the State -- rather than charging Mohan generally under the statute -- charged and tried Mohan specifically and only as a "parent" of C.  The circuit court determined Mohan was a "parent" as contemplated by the criminal statute because he was: (1) a "live-in" step-parent; and (2) a *de facto* parent; and (3) he stood *in loco parentis* to C.  Accordingly, we are tasked with determining whether

6

the General Assembly intended the word "parent" to be broadly interpreted to include these classes of individuals.

The criminal statute under which Mohan was charged reads as follows:

> (b)(1) A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not cause sexual abuse to the minor.

CR § 3-602(b)(1).

The word "parent," read on its own, is subject to two or more reasonable interpretations. *Gilmer v. State*, 389 Md. 656, 663 (2005) ("When there is more than one reasonable interpretation of a statute, however, the statute is ambiguous."). It is reasonable to read the word "parent" to mean exclusively biological or adoptive parent. The term may also be read in a broader, more colloquial sense, including a step-parent with responsibilities akin to those of a parent. The ambiguity of the term "parent" arises from the lack of any clarifying definition provided by the General Assembly. Accordingly, because the term "parent" is subject to more than one reasonable interpretation -- for the want of a supplied definition -- we must turn to other indicia of the legislative intent to determine the contemplated meaning of the term. *Harrison-Solomon*, *supra*, 442 Md. at 265–66.

Our inquiry and reading of the statute must not be siloed to a single word or subsection alone. Indeed, we will "view[] the statute within the context of the statutory scheme to which it belongs . . ." *Lockshin*, *supra*, 412 Md. at 276. Although there is no supplied definition of the term "parent," we endeavor to discover the contemplated

7

meaning of the term by examining the other classes of individuals prohibited from causing sexual abuse to a minor.

CR § 3-602(b)(1) designates three discernable classes of persons prohibited from causing sexual abuse to a minor: (1) parents; (2) other persons who have permanent or temporary care or custody of a minor; and (3) other persons who have responsibility for the supervision of a minor.[3] Subsection 3-602(b)(2) prohibits the sexual abuse of a minor by the following additional classes of individuals:

> (2) A household member or family member may not cause sexual abuse to a minor.

CR § 3-602(b)(2).

Unlike the term "parent," the terms "family member" and "household member" are clearly defined in CR § 3-601(a):

> (3) "Family member" means a relative of a minor by blood, adoption, or marriage.
>
> (4) "Household member" means a person who lives with or is a regular presence in a home of a minor at the time of the alleged abuse.

CR § 3-601(a)(3)-(4).

---

[3] The Court of Appeals has previously equated "permanent or temporary care or custody" with an individual who is standing *in loco parentis*. *See Pope v. State*, 284 Md. 309, 322 (1979) ("*Bowers* equates 'permanent or temporary care or custody' with *in loco parentis*, but 'responsibility for the supervision of' is not bound by certain of the strictures required for one to stand in place of or instead of the parent.") Accordingly, we equate "permanent or temporary care or custody" as used in CR § 3-602(b)(1) with the term and meaning of *in loco parentis*.

Accordingly, the criminal statute, read in its entirety, prohibits the following five classes of individuals from causing sexual abuse to a minor: (1) parents; (2) other persons who have permanent or temporary care or custody of a minor and/or are individuals standing *in loco parentis*; (3) other persons who have responsibility for the supervision of a minor; (4) family members related by blood, adoption, or marriage; and (5) household members who live with the minor or have a regular presence in the home at the time of the abuse.

In total, the classes of individuals range from "parent," to marital or blood relatives, to individuals who only have a regular presence in the home. Indeed, the General Assembly constructed a comprehensive statute in order to apply to as many individuals as possible who might have a close relationship of trust with a minor child. Accordingly, a primary consideration we face is whether a broad interpretation of the term "parent" would render any other portion of the statutory scheme "surplusage, superfluous, meaningless, or nugatory." *Gilmer v. State*, 389 Md. 656, 663 (2005).

In this context, we determine whether the word "parent" as used in CR § 3-602(b)(1) is meant to be broadly interpreted to include an individual such as Mohan who was a "live-in" step-parent of C. Notably, the circuit court arrived at its conclusion that Mohan was a "parent" under CR § 3-602(b)(1) by reasoning that:

> The argument of defense counsel is that Mr. Mohan is not a parent as contemplated by Criminal Article 3-602(b)(1). I find that he is a parent as contemplated by 3-602(b)(1) just using common sense.
>
> He is married or he was at the time of the alleged offense. He was married to [C]'s mother. I believe using the

9

factors that were articulated in the *Conover*[4] case, in the spirit of that case, that he was acting as a *de facto* parent. That the legal parent or the biological parent, she facilitated the relationship between Mr. Mohan and [C]. He was her father figure. That's the testimony. That he was a live-in [step-parent]. He provided the functions of the [step-parent].

So, again, I just see all of the elements there.

Most importantly, I think the reason the legislature promulgated this statute and defined a parent as a person who could commit this offense, it's because of that -- how -- it's that breach of trust that I believe that was probably contemplated by the legislature that was so violative of decency and violative of what we all experience as what should not happen in a civilized society.

So the rationale behind the statute's promulgation I think will be further[ed] by me finding that Mr. Mohan is a parent as as (sic) contemplated by that statute.

He is -- also stands *in loco parentis* as counsel has stated. Again, maybe not a dispositive fact, but a factor nonetheless. So I deny your motion for that, on that ground.

By the circuit court's reasoning, Mohan was a "parent" under CR § 3-602(b)(1) because the nature of his relationship to C was characteristic of a "parent." The circuit court utilized three "factors" to conclude Mohan was a "parent" under the criminal statute: (1) he was married to C's biological mother at the time of the abuse and acted as a "live-in" step-parent; (2) he was a *de facto* parent under the four-factor test in *Conover*; and (3) he stood *in loco parentis* to C.

We first consider whether the General Assembly intended for the term "parent" to include an individual who stands *in loco parentis*. Again, our goal is to ascertain the intent

---

[4] *Conover v. Conover*, 450 Md. 51, 74 (2016).

of the General Assembly, and we will read the entire statute in a way that "avoid[s] constructions that render any portion of the language superfluous or redundant." *Blondell*, *supra*, 341 Md. at 691.

Broadly interpreting "parent" to include individuals standing *in loco parentis* and/or having "permanent or temporary care or custody" results in unnecessary redundancy.[5] This is because "parent" and *in loco parentis* appear as separate categories in the same subsection. The General Assembly clearly delineated the statute by including a disjunctive in the provision: "*parent or other person* who has permanent or temporary care or custody . . ." CR § 3-602(b)(1) (emphasis added). In our view, this indicates that the General Assembly intended "permanent or temporary care or custody" -- and/or *in loco parentis* -- to operate independently, and not to serve as a factor to find that a criminal defendant is a "parent." We, therefore, hold the trial judge erred by including "*in loco parentis*" and/or "permanent or temporary care or custody" within the contemplated meaning of the term "parent."[6]

---

[5] Again, the Court of Appeals previously equated "permanent or temporary care or custody" with an individual standing *in loco parentis*. *See Pope v. State*, 284 Md. at 322.

[6] We must emphasize our interpretation does not mean a biological or adoptive parent could not also stand *in loco parentis*. Instead, our interpretation concludes all biological or adoptive parents may stand *in loco parentis*, but not all individuals who stand *in loco parentis* are equivalent to a "parent" under the contemplated meaning of the term and the legislative intent of the statute.

11

We now consider whether the General Assembly intended "parent" to be interpreted to include individuals who are *de facto* parents under the four-factor test in *Conover*.[7] By the plain language of the statute, there is no indication the General Assembly intended the term "parent" to include *de facto* parents. This is simply because the term -- or any intent to include the term -- is absent. Our research -- thorough we trust -- has revealed that *de facto* parenthood -- as a legal concept set forth in *Conover* -- has never been used in any Maryland case to interpret a criminal statute or to determine the application of a criminal statute to a defendant charged with a crime. Indeed, the *de facto* parent factors have limited application for establishing "standing to contest custody or visitation." *Conover*, *supra*, 450 Md. at 85. We, therefore, reject the invitation to broadly interpret a criminal statute to incorporate the civil *de facto* parent doctrine into an area in which it has no origin or corollary application.

Furthermore, interpreting "parent" to include an individual who is a *de facto* parent, as defined by the four factors in *Conover*, would result in unnecessary redundancy when viewed in the context of the statutory scheme. At least two of the four *Conover* factors -- assuming parental obligations and responsibilities and sharing the same household -- are

---

[7] The four *Conover* factors are: "(1) that the biological or adoptive parent consented to, and fostered, the petitioner's formation and establishment of a parent-like relationship with the child; (2) that the petitioner and the child lived together in the same household; (3) that the petitioner assumed obligations of parenthood by taking significant responsibility for the child's care, education and development, including contributing towards the child's support, without expectation of financial compensation; and (4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in nature." *Conover*, *supra*, 450 Md. at 74 (2016).

already present in subsections 3-601(b)(1) as the "responsibility for [] supervision," and as a "household member" under subsection 3-601(b)(2). Broadly interpreting "parent" to include these categories that resemble the *Conover* factors undermines the General Assembly's clear intent to specifically delineate relationships to a minor child that are less than a biological or adoptive parent. We hold that individuals who are neither biological nor adoptive parents are not "parents" under CR § 3-602(b)(1) even if they satisfy the non-statutory criteria for *de facto* parenthood.

Lastly, we consider whether the General Assembly intended the term "parent" to be broadly interpreted to include someone who is a step-parent to a minor child. By the plain language of the statute, there is no indication that the General Assembly intended "parent" to include step-parents. Broadly interpreting "parent" to include an individual who is a "live-in" step-parent is not necessarily redundant. Nevertheless, narrowly interpreting "parent" to exclusively mean biological or adoptive parent is consistent with the legislative intent and is in harmony with the remainder of the statute. This is because a step-parent could fall under CR § 3-602(b)(2) as a "family member" related to the minor child by marriage.

The fact that a legally married step-parent could fall under a separate subsection -- which carries the same maximum penalty as a "parent," if convicted -- indicates that the General Assembly intended to narrowly construe "parent" to biological and adoptive parent only. When weighing "the relative rationality of competing constructions[]," it is more rational to construct the statute and the meaning of the term "parent" in a way that is more exclusive rather than inclusive. *Harrison-Solomon*, *supra*, 442 Md. at 265–66. This

13

reasoning is buttressed by the multitude of cases that stand for the widely understood legal meaning of the term "parent" to be limited to biological or adoptive parent only. *See E.N. v. T.R.*, 474 Md. 346, 351 (2021) ("a child's legal parent, i.e., biological or adoptive parent[]"); *Kpetigo v. Kpetigo*, 238 Md. App. 561, 569 (2018) ("Instead, step-parents previously have stood in the same shoes as other non-parental third parties."). Further, any ambiguity must be construed in favor of the criminal defendant.[8] As a result, we hold that the General Assembly did not intend for the term "parent" under CR § 3-602(b)(1) to include individuals who are step-parents.

In sum, the ambiguity regarding the term "parent" is resolved when viewed in context of the larger statutory scheme. The most logical and harmonizing conclusion is that "parent" is meant to be narrowly construed as biological or adoptive parent only. The classes of individuals that share characteristics of *de facto* parenthood and *in loco parentis* are identified in other subsections of the statute. Interpreting "parent" to include these classes would render both "parent" and the other subsections redundant and would unnecessarily broaden the penal statute. Furthermore, narrowly interpreting "parent" as a biological or adoptive parent -- excluding step-parents -- does not cut against the legislative

---

[8] We have been mindful throughout our review of this case that it is "[a] fundamental principle that penal statutes are to be strictly construed[]," and interpreted narrowly so that "courts will not extend the punishment to cases not plainly within the language used." *Ishola v. State*, 404 Md. 155, 162 (2008) (internal quotation marks and citations omitted). This fundamental principal, i.e., the rule of lenity, may be applied "when all other tools of statutory construction fail to resolve an ambiguity." *Oglesby v. State*, 441 Md. 673, 681 (2015).

intent of prohibiting as many individuals as possible who are in a position of trust from sexually abusing a minor.

Moreover, although our decision is made without deference to the circuit court's findings, we must emphasize the forced and subtle interpretation engaged by the circuit court to extend the statute's application to Mohan. The circuit court reasoned that Mohan was a "parent" because his relationship with C was characteristic of certain modes of relationship to a minor child. The circuit court then used these characteristics as "factors" to conclude he was effectively a "parent" under CR § 3-602(b)(1).

The effect of such makeshift statutory interpretation cuts against the General Assembly's intent to clearly differentiate the various modes of culpability. Had the General Assembly intended to create a statute that would allow someone to be charged and convicted as a "parent" by meeting various statutory and non-statutory criteria, it could have easily done so. Instead, the General Assembly created classes of individuals ranging from the narrowly specific -- a biological or adoptive parent -- to more general classes of persons. Indeed, interpreting "parent" as its plainly understood legal meaning speaks to, and does not detract from, the General Assembly's intent to create four other categories that capture various individuals who stand in a close position of trust to a minor child. To interpret "parent" so broadly as to swallow these other categories would detract from the General Assembly's efforts to craft such a comprehensive statutory scheme.

We, therefore, hold the contemplated meaning of "parent" under CR § 3-602(b)(1) is limited to biological or adoptive parent only. Because Mohan was neither the biological

15

nor adoptive parent of C, his conviction for child sexual abuse under CR § 3-602(b)(1) must be reversed.

The circuit court relied on its factual findings that Mohan was a "live-in" step-parent, and a *de facto* parent, and stood *in loco parentis* to C to conclude Mohan was a "parent" under the criminal statute. Although the State does not adopt all the circuit court's reasoning, we address the State's arguments on appeal.

First, the State, in attempting to defend essentially the charging decision made in this case, asserts Mohan's argument only implicates a variance between the *allegata* and the *probata* -- or in other words -- a variance between what was alleged in the Criminal Information and what was introduced at trial. *Crispino v. State*, 417 Md. 31, 51 (2010) ("A variance has been defined as a difference between the allegations in a charging instrument and the proof actually introduced at trial.") (internal quotation marks and citations omitted).

Although the State improperly construes Mohan's argument, it is certainly correct that there was no variance between what the Criminal Information alleged and what was presented at trial. The Statement of Charges, the Criminal Information, the evidence adduced at trial, and Mohan's ultimate conviction, all operated under the State's theory that Mohan was a "parent" of C. Accordingly, there is no difference between the *allegata* or *probata*. This revelation, however, does not support the State's position here because -- as we have held based on our holding -- Mohan is not a "parent" of C under the criminal statute and the specific language with which he was charged.

Second, the State argues the evidence was legally sufficient to prove Mohan was a "parent or other person who [had] permanent or temporary care or custody[.]" The State

avers the evidence introduced at trial -- as well as Mohan's own testimony -- conclusively established he stood *in loco parentis* to C and was a person with care or custody of C within the meaning of CR § 3-602(b)(1). The State asserts the various modes of culpability under the criminal statute are not mutually exclusive and therefore not inconsistent with the notion that a "parent" may also have "care or custody" of a minor.

The State's logic is correct. It is entirely possible for an individual to be both a "parent" and to have "care or custody" of a minor. The State is incorrect, however, in its assertion that "the charging document may be construed as charging Mohan under § 3-602(b)(1) generally[.]" The Statement of Charges and the Criminal Information *did not charge Mohan generall*y. Instead, it charged him specifically and only as a "parent."[9] We are prohibited from construing the Criminal Information beyond the language used in the Criminal Information to create a broader category of uncharged criminal culpability. *See Tapscott v. State*, 106 Md. App. 109, 135 (1995) ("[w]hen the State delineated the particular section of the statute, however, it charged only the conduct and circumstances proscribed by that section.").

In *Tapscott*, the State charged the defendant with violating the predecessor to CR § 3-602(b)(1). The indictment alleged that the defendant was a person "having responsibility for supervision" of the minor child. *Id*. at 133. The trial court instructed the jury that it could find the defendant guilty of child abuse if Tapscott either had permanent

---

[9] The relevant portion of the Statement of Charges and Criminal Information provided: "[Mohan]… did cause sexual abuse to JUVENILE FEMALE, a minor, the defendant being said **child's parent**" and "[Mohan] did cause sexual abuse to [C], [a] minor, the defendant being said **child's parent**[.]"

17

or temporary care of the child or had responsibility for the supervision of the child. *Id*. at 133 n.12.

We reversed and explained that:

> If the State was unsure about the circumstances under which the sexual activity occurred, it could have generally charged appellant under the statute. When construing the rule established in *Leon v. State*, 180 Md. 279, 23 A.2d 706 (1942), the court in *Morrissey v. State*, 9 Md. App. 470, 475–476, 265 A.2d 585 (1970) stated:
>
> > When a statute creates an offense and specifies several different acts, transactions, or means by which it may be committed, an indictment for violation thereof may properly allege the offense in one count by charging the accused in conjunctive terms with doing any or all of the acts, transactions, or means specified in the statute. *See also Ayre v. State*, 21 Md. App. 61, 65, 318 A.2d 828 (1974).
>
> When the State delineated the particular section of the statute, however, it charged only the conduct and circumstances proscribed by that section, and, absent appellant's consent, was barred from later amending the indictment to charge different circumstances.

*Id*. at 135.

Our review of the record in this case reveals that during the trial, the State fully adopted the circuit court's reliance on *Conover* in support of its conclusion that Mohan was a *de facto* parent, and therefore a "parent" under the criminal statute. The State has since abandoned its support of the circuit court's reliance on *Conover* in order to raise another argument that there was sufficient evidence presented at trial to presume Mohan was a legal parent of C.

18

The State acknowledges that presumptive legal parentage was never discussed at trial and that the jury was not asked to determine whether Mohan was C's legal parent based on that statutory presumption of parentage. In its brief, the State cities multiple "presumptive parentage" statutes in its effort to establish Mohan's status as a "parent" under CR § 3-602(b)(1). In our view, these provisions do not apply to the context and facts of this case. First, the presumptions of parentage the State cites apply in the "civil" law context, as they are found in the Estates and Trusts and the Family Law Articles of the Maryland Code, applying to civil disputes clarifying rights, responsibilities, and relationships of family members. *See* Md. Code (1974, 2022 Repl. Vol.), §§ 1-206, 1-208, 1-208.1(a) of the Estates & Trusts Article ("ET"); *see also* Md. Code (1984, 2019 Repl. Vol), §§ 5-1001(j), 5-1027 of the Family Law Article ("FL"). Second, the facts of this case do not implicate these provisions. The rebuttable presumption of parentage applies to "a child *born to parents* who have not participated in a marriage ceremony with each other." ET § 1-208(a), (c) (emphasis added); *see also* FL § 5-1001(j) (defining "putative father" as an alleged father presumed to be the parent under ET § 1-208(c)).

In this case, Mohan and Haley began their relationship *after* C's birth. Indeed, Haley gave birth to C a year-and-a-half before beginning a relationship with Mohan. This was not a situation where the couple were dating, Haley became pregnant, and then C was born, giving rise to a presumption of paternity for Mohan. *Contra Monroe v. Monroe*, 329 Md. 758, 769–71 (1993) (holding putative father doctrine applied to couple who became pregnant and had the child while dating, thus barring introduction of genetic testing by mother attempting to rebut the presumption). Moreover, even if the putative father or

19

presumptive parent doctrine could apply to such a criminal case when a child was born well before the alleged father began dating the child's natural mother, the party seeking to establish the presumption would still need to show that the alleged father (1) acknowledged in writing he was the child's father; (2) openly and notoriously recognized the child as his child; or (3) subsequently married the mother and acknowledged the child as his, either orally or in writing. ET § 1-208(c).

Indeed, there was no discussion, argument, or instruction to the jury regarding the presumption of Mohan's alleged legal parentage. Because this argument has not been presented or preserved at trial, we decline to address it on appeal. *Robinson v. State*, 404 Md. 208, 216–17 (2008) ("It is well-settled that an appellate court ordinarily will not consider any point or question "unless it plainly appears by the record to have been raised in or decided by the trial court.") (citing Md. Rule 8–131(a)); *State v. Grafton*, 255 Md. App. 128, 145 (2022); *see also Woodline v. State*, 254 Md. App. 691, 708 (2022) ("Under Maryland Rule 8-131(a), '[o]rdinarily, [this] court will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court.'").

Even if the State argued Mohan's presumptive parentage during the trial, we struggle to see how applying such a presumption to a criminal statute in which *parentage is an element of the crime charged* would not implicate long-standing due process concerns. "The State always has the burden to prove all elements of a criminal charge beyond a reasonable doubt." *O'Sullivan v. State*, 476 Md. 602, 638 (2021). Permitting presumptions that establish necessary elements of a criminal offense unconstitutionally "[casts] upon a defendant that sort of burden of ultimately persuading the jury of his

20

innocence (by negating in one fashion or another the necessary criminal element[)]." *Evans v. State*, 28 Md. App. 640, 707 (1975), aff'd, 278 Md. 197 (1976). "A presumption . . . may still have some utility for civil trials, but in a criminal trial it cuts squarely athwart the due process requirement that the State prove every element of a crime (including mens rea) beyond a reasonable doubt." *Id.* at 707–08.

Further, when applying a paternity presumption in a civil dispute regarding parentage, "the burden is on the complainant to prove that the 'alleged father is the father of the child.'" *In re Roberto d.B.*, 399 Md. 267, 276 (2007); FL § 5-1027(a) ("At the trial, the burden is on the complainant to establish by a preponderance of the evidence that the alleged father is the father of the child."). Even if the presumption of parentage could somehow apply in a criminal case, the burden would still be on the State to prove the presumption applies to Mohan. In this case, the use of the term "parent" in CR § 3-602(b)(1) defines the relationship that must exist between the perpetrator and the victim for that specific subsection of the statute to apply. That makes "parent" an element of the crime charged. Therefore, because the State charged Mohan as a "parent," the State had the burden of establishing beyond a reasonable doubt this requisite element, that Mohan was C's "parent."

We conclude that the criminal statute's (CR § 3-602(b)(1)) contemplated meaning of the term "parent" is limited to biological or adoptive parents. Indeed, the legislative history of the statute at issue supports our analysis. The legislative history is addressed in *Pope v. State*, 284 Md. 309 (1979), where the Court of Appeals noted that:

21

The General Assembly first evidenced its concern with the mistreatment of children fifteen years ago when it added § 11A to Art. 27 of the Maryland Code, later codified as Section 35A of that article, declaring an assault on a child to be a felony. The statute in its entirety provides:

> "Any parent, adoptive parent or other person who has the permanent or temporary care of custody of a minor child under the age of fourteen years who maliciously beats, strikes, or otherwise mistreats such minor child to such degree as to require medical treatment for such child shall be guilty of a felony, and upon conviction shall be sentenced to not more than fifteen years in the Penitentiary."

*Id*. at 317.

Undoubtedly, "parent," as originally enacted, referred to "biological parent" instead of "adoptive parent." This is underscored by the holding in *Pope*, equating "parent" with biological parent. *Id*. at 328-29. Thereafter, "adoptive parent" was dropped from the predecessor to CR § 3-602(b)(1) in 1984. The legislative history regarding that amendment reflects the following:

> REVISOR'S NOTE: This subsection formerly appeared as Article 27, § 35A(b)7.
>
> In item (1) of this subsection, the words "adoptive parent", which formerly followed "parent", are deleted as unnecessary.

1984 Md. Laws Ch. 296 at 16. Clearly, "adoptive parent" was "unnecessary" because "adoptive parent" is a parent akin to a biological parent, and therefore, falls within the ambit of "parent" as originally enacted.

Mohan, who was a "live-in" step-parent or individual who stood *in loco parentis* to C, is not a "parent" under CR § 3-602(b)(1). Accordingly, we reverse Mohan's conviction

22

for child sexual abuse.  Given the circumstances of this case, however, we shall also vacate Mohan's sentence for third-degree sexual offense (which was completely suspended) and remand the conviction for that offense for resentencing. *Twigg*, *supra*, 447 Md. at 30 n. 14 (affirming an appellate court's discretion to vacate "all sentences originally imposed on those convictions and sentences left undisturbed on appeal, so as to provide the court maximum flexibility on remand to fashion a proper sentence that takes into account all of the relevant facts and circumstances.").

Here, the circuit court sentenced Mohan to 25-years' incarceration for child sexual abuse, the statutory maximum. *See* CR § 3-602(c).  For the third-degree sexual offense, the court sentenced Mohan to 10 years, consecutive to the 25-year sentence, but entirely suspended the 10-year sentence in favor of five years of supervised probation. Accordingly, Mohan's total sentence was 35 years, with all but 25 years of the period of incarceration suspended.  In light of our reversing Mohan's conviction for child sexual abuse, the only sentence remaining in this case is the suspended 10-year sentence for third-degree sexual offense.

We, therefore, vacate and remand the remaining sentence for third-degree sex offense to the circuit court for resentencing.  Under Maryland Rule 8-604(d)(1), an appellate court is authorized to remand a case to a lower court if it "concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings." Md. Rule 8-604(d)(1).  Further, under the reasoning in *Twigg* and its progeny, we "remand in a case where the sentencing package was disturbed by a decision to reverse a conviction."

23

*Johnson v. State*, 248 Md. App. 348, 357 (2020); *see also Nichols v. State*, 461 Md. 572, 609 (2018) ("where an appellate court determines that at least one of a defendant's sentences must be vacated, the appellate court may vacate all of the defendant's sentences and remand for resentencing.").

In sum, we reverse Mohan's conviction for child sexual abuse under CR § 3-602(b)(1). We vacate Mohan's sentence for third-degree sexual offense and remand to the trial court for resentencing. In so doing, the trial court will "[be] in the best position to assess the effect of the withdrawal and to redefine the package's size and shape (if, indeed, redefinition seems appropriate)." *Twigg*, *supra*, 447 Md. at 28. The sentencing court may impose a sentence on the remaining count for third-degree sexual offense up to "the maximum . . . incarceration available at the time of [the defendant's] crime[]." *Id.* at 30. Any new sentence, however, cannot "exceed the aggregate sentence imposed originally." *Id.* at 30 n.14. In other words, the new aggregate sentence cannot be "more severe" than the original aggregate sentence. *State v. Thomas*, 465 Md. 288, 310 (2019).

## II. The circuit court did not err in admitting certain testimony as prior consistent statements.

Mohan presents an additional argument that the circuit court erred in admitting hearsay evidence at trial. Mohan asserts the circuit court improperly admitted out-of-court statements, specifically witness statements reciting Haley's statements of C's disclosure of Mohan's alleged abuse as well as Mohan's alleged admissions. Mohan argues these witness recitations of Haley's statements are hearsay and not subject to any exception to the rule against hearsay.

24

Mohan challenges three evidentiary submissions: (1) the testimony from social worker Keri Hignutt conveying Haley's prior statements; (2) the testimony from Detective Daniel Shultz conveying Haley's prior statements; and (3) a screenshot of a series of text messages sent by Haley to Mohan's mother. The circuit court admitted the evidence and determined the testimony was admissible as prior consistent statements. We review *de novo* the circuit court's legal determinations. *Brooks v. State*, 439 Md. 698, 709 (2014).

We summarize the context of the statements to address Mohan's contention that the testimony and text messages were improperly admitted into evidence. During the State's case-in-chief, Haley testified that C told her that Mohan put his penis on her vaginal area on two separate occasions, approximately a month between incidents. Haley further testified that Mohan denied that these incidents occurred, but he subsequently admitted that the exposure to C did, in fact, occur. Haley testified she "[told] the police what [her] daughter had said," and further, what Mohan had admitted.

On cross-examination, defense counsel asked Haley about what she told Detective Shultz and social worker Keri Hignutt, specifically regarding C's disclosure and Mohan's admission:

> Q. When you went to the police, . . . [o]ne of the people you talk to is a lady by the name of Keri Hignutt . . . [a] lady affiliated with the Child Advocacy Center?
>
> A. Yes.
>
> Q. Now, when you spoke to Ms. Hignutt, you provided her information not just about what [C] told you but what Brandon is supposed to have told you. You talked to her about both of those things?

A. Yes.

Q. Your testimony just moments ago during direct was that Brandon's admission to you was in your mind, and as a paraphrase, so clear it up for me if I'm wrong, but Brandon's disclosure to you, Brandon's admission to you, was substantially similar to what [C] had told you had happened?

A. Yes.

Q. I want to break that down a little bit. Because when you went to the police the next day and you spoke to Ms. Hignutt, isn't it true that you told Ms. Hignutt, Keri, that [C] had touched his penis a few days prior?

A. I wasn't—I don't think I said that. I'm not sure.

Q. You—

A. It was—I may have said it in that way, but what I had meant was Brandon told her to touch—she—the bottom line, she had touched his penis.

Q. And that's just the first part of breaking it down, because you also told Keri, Ms. Hignutt, that Brandon's admission to you was that the prior event—

A. Uh-huh.

Q. —the event that had happened some weeks or months prior consisted of [C] watching Brandon urinate? That's what you told Keri Brandon's admission was?

A. Okay.

Q. Well, I'm asking.

A. I don't know. I don't know.

Q. Isn't that what you told Keri?

A. It was a year ago. I'm not sure.

26

Q. Okay.

A. It was a very stressful time.

Q. I understand.

Q. But you'd agree it's an important distinction?

A. Absolutely.

Q. Touching penis to vagina versus a child who is regularly bathed by someone seeing her father figure's penis?

A. Uh-huh.

Q. You would agree those are quite different?

A. Yes.

On redirect examination, Haley testified that on the same day that she spoke to Detective Shultz and Ms. Hignutt, she also communicated via text message with Mohan's mother. Haley testified the topic of their conversation related to C's and Mohan's statements. The State showed Haley a copy of her text message exchange with Mohan's mother to refresh her recollection "as to exactly what Mr. Mohan had told [her]." Haley testified -- based on her refreshed recollection -- that Mohan told her "it happened two times, and that [C] watched him pee the first time, and then the second time that she touched his penis." Haley testified that Mohan's version of events was inconsistent with what C had disclosed to her.

C then took the stand and testified that Mohan put his penis on her vaginal area during both incidents. C's testimony was consistent with the description Haley provided to Ms. Hignutt and Detective Shultz. When Ms. Hignutt and Detective Shultz testified, the

27

State asked what Haley had told them regarding C's disclosure of the alleged abuse to her, drawing hearsay objections from defense counsel. The circuit court overruled both objections and allowed the testimony as prior consistent statements. The circuit court further determined that defense counsel had opened the door to the admission of the prior consistent statements by questioning Haley about the consistency of her disclosures to Ms. Hignutt and Detective Shultz. Both witnesses then testified that Haley told them that C disclosed to her that Mohan had inappropriately touched her and put his penis on her vaginal area.

Mohan took the stand in his defense and testified that he did not inappropriately touch C, but rather, C saw his penis when he was using the bathroom and he showed it to her when she asked to see it. Mohan testified on cross-examination, however, that C touched his penis without his consent and did so deliberately against his instruction not to do so. Mohan then testified -- contrary to Haley's prior testimony -- that he told her C had touched his penis on her own volition.

The State called Haley in rebuttal and offered her text message exchange with Mohan's mother to serve as a prior consistent statement regarding what she conveyed to her about Mohan's admission to her. The court determined the text message exchange was admissible as a prior consistent statement and that the danger of unfair prejudice did not substantially outweigh its probative value.

Mohan argues that the three statements are inadmissible hearsay, and do not meet the exception for hearsay as prior consistent statements under Md. Rule 5-802.1(b). The State argues the evidence was properly admitted -- not as an exception to hearsay -- but

28

rather, as nonhearsay as prior consistent rehabilitative statements properly introduced under Md. Rule 5-616(c)(2).

Prior consistent statements may serve two purposes under the Maryland Rules. A prior consistent statement offered not for its truth or for substantive evidence may be used to rehabilitate a witness's credibility under Md. Rule 5-616(c)(2):

> (2) Except as provided by statute, evidence of the witness's prior statements that are consistent with the witness's present testimony, when their having been made detracts from the impeachment[.]

Md. Rule 5-616(c)(2).

Alternatively, when a prior consistent statement is offered for its truth and as substantive evidence -- hearsay -- it may nevertheless be admitted as an exception to hearsay if it is:

> (b) A statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive[.]

Md. Rule 5-802.1(b).

Accordingly, the key difference between these provisions is that Md. Rule 5-616(c)(2) applies to nonhearsay rehabilitative statements whereas Md. Rule 5-802.1(b) applies to hearsay statements that rebut an express or implied charge of fabrication or motive to deceive. We have previously summarized the interplay of the two rules: "When a prior consistent statement is inadmissible under Md. Rule 5-802.1(b), it may nevertheless be admissible as nonhearsay to bolster credibility under Md. Rule 5-616(c)(2)[.]"

29

*Quansah v. State*, 207 Md. App. 636, 658 (2012). Indeed, statements made under Md. Rule

5-616(c)(2) for rehabilitative purposes are apart from hearsay statements:

> Prior consistent statements used for rehabilitation of a witness whose credibility is attacked are relevant not for their truth since they are repetitions of the witness's trial testimony. They are relevant because the circumstances under which they are made rebut an attack on the witness's credibility. Thus, such statements by definition are not offered as hearsay and logically do not have to meet the same requirements as hearsay statements falling within an exception to the hearsay rule.

*Thomas v. State*, 429 Md. 85, 108 (2012) (quoting *Holmes v. State*, 350 Md. 412, 427).

Accordingly, we must first determine whether the evidence at issue was offered as substantive hearsay evidence or non-substantive evidence to rehabilitate Haley as a witness. The law is settled that "[i]f the proponent of the evidence is asking the jury to rely on what the declarant said, out-of-court, as true (accurate), it is hearsay." *Thomas*, *supra*, 429 Md. at 109 (quoting Lynn McLain, Md. Rules of Evidence 182 (2d ed. 2002)).

The testimony from Detective Shultz, Ms. Hignutt, and the text message exchange between Haley and Mohan's mother were offered to rehabilitate Haley's credibility by showing the consistency of her disclosures with her trial testimony. Indeed, these statements were not offered for their content -- that Mohan initiated the encounters with C -- but rather, that Haley consistently relayed Mohan's alleged admission and C's disclosure to Detective Shultz, Ms. Hignutt, and Mohan's mother. The admission of these statements falls within the ambit of Md. Rule 5-616(c)(2) where "defense [counsel] contended that

30

[Haley] made inconsistent out-of-court statements and the [witness] testimony was offered to rebut a prior inconsistency."[10] *Thomas*, *supra*, 429 Md. at 110.

Having determined the statements were not offered for their truth or as substantive evidence, we now address whether the statements satisfy the requirements of Md. Rule 5-616(c)(2). The offered statements must be consistent with the witness's present testimony and detract from or logically rebut the impeachment. *Thomas*, *supra*, 429 Md. at 108.

Haley was effectively impeached by defense counsel during cross-examination when counsel drew attention to her lack of memory and/or inconsistencies regarding what she reported to Detective Shultz, Ms. Hignutt, and Mohan's mother. The State then elicited statements from Detective Shultz, Ms. Hignutt, and the text message exchange with Mohan's mother that reiterated Haley's consistent description of events in direct examination, thereby attempting to rehabilitate her. Accordingly, Haley's statements that were relayed to Detective Shultz, Ms. Hignutt, and Mohan's mother were consistent with her prior statements and had the effect of detracting from defense counsel's impeachment. We hold, therefore, that the circuit court did not err in admitting this evidence as prior consistent rehabilitative statements under Md. Rule 5-616(c)(2).

---

[10] We note that Md. Rule 5-616(c)(2) has a necessary predicate that the witnesses be impeached before a prior consistent statement may be introduced to rehabilitate. In other words, a party "open[s] the door" to evidence that is relevant and admissible -- for the purpose of rehabilitation -- when that party successfully impeaches a witness or draws into question the credibility of the witness in either an opening statement or cross examination. *Quansah*, *supra*, 207 Md. App. at 663 (citing *Johnson v. State*, 408 Md. 204, 226 (2009)). Here, defense counsel opened the door to rehabilitation when questioning Haley on the consistency of her statements to Ms. Hignutt and Detective Shultz.

**III.    Conclusion**

In sum, we hold that the term "parent" under CR § 3-602(b)(1) was contemplated by the General Assembly to mean biological or adoptive parent only, i.e., legal parent. Accordingly, because Mohan was charged, tried, and convicted specifically and only as a "parent" of C, we reverse his conviction for child sexual abuse. Further, we hold that the trial court did not err in admitting certain statements as prior consistent statements under Md. Rule 5-616(c)(2). Lastly, we vacate Mohan's sentence for third-degree sex offense and remand to the trial court for resentencing consistent with this opinion.

> **JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY REVERSED, IN PART, AND AFFIRMED, IN PART. SENTENCE FOR THIRD-DEGREE SEX OFFENSE VACATED. CASE REMANDED TO THAT COURT FOR RESENTENCING ON THE CONVICTION FOR THIRD-DEGREE SEX OFFENSE.  COSTS TO BE PAID BY WICOMICO COUNTY.**

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1853

September Term, 2021
_____

BRANDON MOHAN

v.

STATE OF MARYLAND
_____

Berger,
Friedman,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____

Concurrence by Friedman, J.
_____

Filed:  November 30, 2022

I concur in the judgment reached by my colleagues in the majority, but only because I am bound by precedent to follow what I consider to be an incorrect reading of the governing statute, Section 3-602(b) of the Criminal Law ("CR") article of the Annotated Code of Maryland. A plain reading of CR § 3-602 (b)(1) does not create "three discernable classes," as my colleagues write, Slip Op. at 8, but one class that encompasses all people who are a parent or in a parent-like relationship to their sexual abuse victim. This clear, plain, and commonsense reading of the statute is, however, foreclosed by the Court of Appeals' decision in *Pope v. State,* 284 Md. 309, 321-22 (1979) (holding that people having "responsibility for supervision" of a child victim is a distinct category from people having "care or custody" of a child victim), and, even more so, by our reported opinion in *Tapscott v. State,* 106 Md. App. 109, 135 (1995) ("These alternatives are in the disjunctive, setting forth several different classes of people who fall within the proscriptions of the statute."). I write separately, therefore, in the fervent hope that the Court of Appeals will take this opportunity to correct this misreading of the statute or so that the General Assembly can revise the statute to make even more plain, the meaning that should always have been plain.

The very words of CR § 3-602(b)(1) make it clear to me that the General Assembly intended to include within it all persons who are in a parental relationship or a parent-like relationship with the child victim: "A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not cause sexual abuse to a minor." I read that definition to encompass a variety of people who are in a parent-like relationship to a child victim, either by virtue of having custody or by virtue

of having responsibility or supervision, or both. I do not read these as separate or discrete silos of relationship. Rather, I read the statute as reflecting that the General Assembly, understanding and anticipating the variety of parent and parent-like relationships, created a single definition within which to encompass that variety.

I think that my reading of CR §3-602(b)(1) makes more sense in the context of the criminal law article as a whole. Section 3-308 of the Criminal Law article defines as a sexual offense in the fourth degree, sexual contact on children by people who hold positions of care, custody, and responsibility to the child victim, but whose care, custody, and responsibility is less than parent-like. *Compare* CR § 3-308 (defining a "person in a position of authority" and prohibiting conduct) *with* CR § 3-602 (b)(1) (defining parent and parent-like). With the lesser relationships of care, custody, and responsibility covered by CR § 3-308, the greater relationships of care, custody, and supervision, i.e., those that are parent-like, are covered by CR § 3-602(b)(1).

I am also unconvinced by the legislative history on which my colleagues rely, the deletion of the term "adoptive parent" from the statute as part of code revision in 1984. Slip Op. at 21-22. I think the better reading of that statutory change isn't that "adopted parent" was redundant to "parent," but that it was redundant—and maybe by implication suggested a limitation on—the whole definition of parent and parent-like in CR § 3-602(b)(1) including both "care and custody"-style parent-like relationships and "responsible for supervision"-style parent-like relationships.

Given that understanding of CR §3-602(b)(1), I think that the prosecutor's decision to charge Mohan as C's "parent," if an error at all, was harmless. It could not have led to

2

any confusion or prevented Mohan from having notice of the crime with which he was charged. The alleged misidentification of the relationship didn't change Mohan's relationship with C. Mohan was in a parent-like relationship with his victim, C. He called himself C's father. He was, in fact, C's step-father. He had at least temporary, if not permanent, care and custody of C. He was responsible for C's supervision. He was also certainly within the statutory definition of a "household member" to C. CR § 3-602(b)(2), (a)(3), and CR § 3-601(a)(4). He was also certainly within the statutory definition of a "family member" to C. CR § 3-602(b)(2), (a)(2), and CR § 3-601(a)(3). In my view, Mohan violated the statute in every way that the statute can be violated. He was, in every sense, in a parent-like relationship with C. More importantly, Mohan could not have had any difficulty in understanding the nature of the crime with which he was charged nor was he, in any way, hampered in his ability to defend himself. *See Tapscott*, 106 Md. App. at 127 (citing *Jones v. State*, 303 Md. 323, 336-37 (1985) (an indictment is sufficient if it "sets forth the essential elements of the offense charged" and if confused about an indictment, the defendant may demand a bill of particulars to clarify)).

I, therefore, concur in my colleague's judgment, but only because I am compelled by the mandatory precedents of *Pope* and *Tapscott* to do so.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1853s21cn.pdf